The last case on the oral argument calendar is National Promotions v. National Surety Corporation. Mr. Mason, may it please the Court, Eric Mason of Andrade Gonzalez, LLP, on behalf of Appellants. This appeal concerns the duty to defend our California law, and specifically whether any actions are otherwise known to the insurer gave rise to potential liability of the insurer for negligent or non-intentional conduct. I would like to begin with a brief review of some relevant principles under California law that apply to the duty to defend that I think are important to keep in mind as we work through the facts and the legal analysis of this appeal. And those include the notion that the duty to defend under California law is very broad and any doubts about whether the duty exists are to be resolved in favor of the insured. The duty to defend is triggered when there is even one potentially covered claim in the underlying action, even if other claims are not covered. And the duty to defend is determined by the facts alleged or known and not the labels that are used by the claimant. The insurance policy here that we are concerned with covers property damage caused by an occurrence, which is defined as an accident and provides that the insurer has a duty to defend any suit seeking such damages. Now, based on the facts of the underlying action, the insurers believe that there is a possibility that they could have been found liable based on a theory of negligent or non-intentional conduct, which is what the court's cases under California law are looking for when they consider whether there is essentially an accident under an occurrence-based policy. So the key policy interpretation issue here concerns the term accident. The California Supreme Court has stated that in this context of considering the term accident and insurance policy, that context matters. There is no single overarching definition or understanding that applies, and there have been a lot of formulations of the test for an accident that have been provided over many years, and we'll work through some of those and how they apply here. But it does raise the question sort of what's the appropriate context in which to view the underlying action and the insurance claim for coverage here. And in our view, the most analogous context, our way to think about this case, is that of a contractor who went to the wrong property. Basically, we believe if a contractor enters and works on the wrong property, that is an accident, and there would be coverage under our policy. Is there any California case where that's a reason? The only reason we've located for that specific proposition are the Couch on Insurance treatise and the American Asphalt case, which is the case out of the Southern District of California, applying California law, which relies upon the insurance treatise and other California cases to basically find that a contractor who did some work on the wrong property had stated a claim for a duty to defend under a similar policy. That would seem to be inconsistent with Galgo's language about errors of law or fact, wouldn't it? At a superficial level, yes. And so in our view, and there are some additional authorities that support the notion that under a circumstance where a contractor basically, whether it's because the wrong address was written in the contract or on the work order, or perhaps went to location, thought they were going to the right place and maybe the signs were mixed up or there was some uncertainty about that they were in the right place, that would still be deemed from the perspective of the contractor as an accident. And so one additional authority that I think helps understand that, why that rule applies in this context, and again Delgado was concerned with different facts that don't really apply in the same way here, is the Hogan decision by the California Supreme Court in which basically the use of a defective saw to cut wood unbeknownst to the entity or person who was actually cutting the wood and the manufacturer who had provided the saw was cutting wood too short. There were some defects in the saw that eventually resulted in customers rejecting the wood because they were undercut. And what the Hogan court determined was that under those circumstances where a saw, a tool or something that's been provided to perform a service, had something improper or a defect in it that was unknown to the parties relying upon it and using it, that that was an accident, under an accident-based policy. What the court then found was once the knowledge about the defect was known because the customers were sort of sending the wood back or rejecting delivery because the wood was cut too short, what happened was the wood was then being cut too long essentially so that there would be no issue of having insufficient wood. But that was only after the defect was discovered. What the court found in that situation was that's deliberate. That's intentional. That's not an accident. So that sort of distinction also applies here. We had a situation where the insurers, before they performed any, before they decided to even go onto the site where the posters were located or to paint over them, sort of did an investigation, went to a government website to determine whether the place where they thought these wild postings were was a location that was complying with this statutory scheme that basically required posters of these types of signs to have a permit. It also required people who did have a permit, like the insurers, to go around and abate graffiti or wild postings. And what the insurers did, they saw this location where there were these wild postings. They went to a government website to check and see if that site was permitted. And because they had a duty under the statute to go and abate graffiti, they were essentially in the same position as a contractor to, as a duty under their contract, to go and perform a service, whatever they're supposed to do. And it turned out that, based upon the information that was provided to them by the government website, they went to the wrong place to do the graffiti abatement. That puts them in the same position as a contractor who just went to the wrong place. But you don't have any cases in California dealing with a contractor who went to the wrong place and was covered. Now, you told me you had couch on insurance. You've got to have a published decision out of either the Central or Southern Districts of California. We have not located a decision from a California court. That's an interesting analogy, but it sort of leaves us exactly where we are. Well, there's also no case that says that that specific situation is not deemed to be accidental. It leaves us just exactly where we are. As I said, it's an interesting analogy. I don't know how it helps you win. It doesn't help you lose, but it doesn't help you win. Well, okay. I think we still have to make the determination, right, under California laws of accident, relating to accident, whether the type of conduct here was accidental, or whether there was some sort of accident within the causal chain. So that analysis can be performed under the rules of the accident. The accident, in our view, you have to consider the entire causal chains that are all the causal chains. Where's the accident? The accident starts at the beginning here, and it involves the information that was obtained from the government website. And what information was obtained from the government? As alleged in the underlying action, it was essentially that the site that they were looking at to determine whether it required graffiti abatement under the statute was not a site that was licensed to have the types of posters that were there, and, therefore, to the insurance of the site that they were required to go and abate the wild postings that were found there. Why is that an accident? That's an accident because, well, we can go through some of the sort of formulations of what constitutes an accident under California law, and I think it might be helpful to do that rather than just sort of talking in the abstract about an accident. So one formulation is an unexpected, unforeseen, or undesigned happening or consequence from either a known or unknown cause that's found in the Getty's case. Hogan cites that principle, and it was also cited again in Liberty Surplus, the recent California Supreme Court decision. Yeah, but isn't that what you're talking about in that language for most cases, about the act itself? So now I think what you're trying to do is you're conflating, you know, the information on the government website with the act, because the act of the contractor or the individual going onto the property, that was intentional. There's no – it may have been based on sort of an unforeseen mistake, but the actual act of going onto the property was not unforeseen. In fact, it was very much foreseen. It was intentional. It was planned. It might have been based on this. So I think you might be conflating the language in those cases with the act here, which was not unforeseen. Your Honor, our position is that to look at the entire scope of the insurance acts, you also have to consider both what information they had at the time they initiated that sequence. So to repeat, I think, the questions that Judge Bidane and Judge Parker asked, how is the act, the actual act of going onto the property, an accident? So this is one of our issues with the insurer's approach to looking at the chain of causation, right? The chain of causation for the insurer does not begin the moment that the employee on the ground decided to step over the line onto the property and then start painting over the posters. You have to understand that the entire sequence of acts of the insurer, if you go back to the beginning, what is the first act that starts that chain? Okay, but I still don't understand where the mistake was made here. Is the mistake on the government website? Does the government website have bad information? Did they misread the government website? The government website was correct, but somebody forgot their glasses and misread it, or somebody wrote the number down wrong. It could potentially be any of those. The government website could have been inaccurate, right? Maybe the property owners sort of tried to register their site. They put the number in wrong. It didn't show up on the search. That is an undesigned or unforeseen happening or consequence from the perspective of the insurance. Or maybe they misinterpreted the information from the website inadvertently, or on the ground it was misapplied in some way to determine exactly which location to go to. But if somebody on one of your clients misread the website, caught their glasses, took a six for an eight or something, and sent his folks to the wrong address, do you think that that would be covered? And again, what do we do with Delgado's language about mistakes of law and mistakes of fact? First, it's not constituting accidents. It's broad language in Delgado. I concede that. And I think the Liberty surplus insurance case provides, I think, some guidance in terms of how to understand statements of law in prior decisions. I think that's why the notion of context matters, right? You have principles that have been articulated over time, but you have to understand those both in the context of the case and then also how they're applied to different circumstances that maybe haven't been addressed before. And in the context of understanding the insurance acts here, I think what's important to keep in mind, again, is that from their perspective, they had a duty, in essence. If they were told by this website or by the information they derived from the website to go and abate graffiti at somewhere, they had to go do it. So to tell them now that they're not going to be protected by insurance if through no fault of their own they essentially went to the wrong place is, I think, both not what is called for in the policy, and it also would be an unfortunate precedent for contractors generally who might just sort of have inadvertently go to the wrong place. Do you wish to save the remainder of your time, Counselor? Do you think? Okay. All right. Thank you, Mr. Mason. We'll hear from Mr. Galt. Good morning, Your Honors. Doug Galt for Defendant Appellate. I think the questions the court posed to the appellant are right on point. The Delgado case, the decision by the California Supreme Court, says that the focus of the inquiry as to whether a claim falls within a liability policy is caused by occurrence, which is defined as accident limitation, is on the liability-producing conduct of the insured. And the liability-producing conduct committed here, allegedly, was the painting over of the other company's signs. That conduct was not inadvertent. There can be an accident, or the accident requirement can be satisfied, when the insured's liability-producing conduct is intentional, if after the insured committed the act there is some undesigned, unintended consequence. But here, the consequence that followed the insured's intentional act was designed. It was the obliteration of these signs. The plaintiff posits the existence of unintended, uncontemplated, accidental conduct that predated the insured's deliberate liability-producing conduct, but that's irrelevant to the inquiry. If that were relevant, then the cause by occurrence requirement would be moved, because you could always come up with some accident that happened, and some unintentional conduct that preceded the event. But you don't need to go back in time. Under W&O, you focus on what was the conduct that, if the insured committed it, would result in the insured's liability to the third party. And if that conduct was deliberate, then it doesn't meet the accident requirement, unless something happened afterwards that the insured did not anticipate. And we don't have that here. An example that's useful and that's applicable to the argument presented by plaintiff here is the Legesma case where the California Supreme Court held that an employer can be held liable for the deliberate act committed by its employee if the basis of the employer's liability is negligent hiring, training, or supervision. And the court read it this way. The court said that, of course, the hiring, training, and supervision of an employee is deliberate, not accidental. But when that employee commits an act outside the scope of employment, that act is not foreseen by definition by the employer. And that succeeding act, that succeeding unforeseen act, then that means that the resulting damage was caused by accident from the perspective of the employer. Counsel, what do you do with a hypothetical post by opposing counsel about a contractor goes to the wrong address? Let's suppose that somebody at the home office said, oh, you've got to get out here and take care of this. And it's 418 State Street, and it turned out to be 416 State Street. Somebody has made a mistake. Contractor goes out to the wrong address and takes down their garage, their detached garage. Now what? That's no different from the cases discussed in Delgado, where the insurer acted under a mistaken belief that the facts or laws supported the conduct that was being committed. Most of the examples in Delgado dealt with child abuse. That's why I'm thrown just a little bit by Delgado. It's not some very, very broad language that's very helpful to you in the abstract. I'm not exactly sure how to apply it, because the assault examples that are used and repeated in Delgado don't seem to be exactly the same as the contractor who goes to the wrong house and takes down their detached garage by mistake. Well, the unpublished federal district court decision that the plant was relying on mentions that the conduct at issue there was not inherently harmful. Contractor was doing work that he thought he was hired to perform that would be beneficial. But here, the conduct that the insurer was committing was not what was inherently harmful. It was painting over the adversary's signs. It can't suggest that it thought it was beneficial, the owner of those signs, by doing that act. No, but they thought they were fulfilling their statutory obligation to abate illegal signage. That doesn't change the fact that it knew it was causing property damage. It thought it had the right and, indeed, the duty to damage that property. But the mistaken belief in its legal right or even obligation to do it doesn't convert its act of intentionally damaging property into an accident. The contractor situation is different because the contractor thinks it is performing an improvement to the property. I guess if you wanted to analogize here, if the claim was by the property owner rather than by the owner of the signs, it might be more analogous. But here, the claim was brought against our plaintiff by the owner of the signs. There's no way that our plaintiff could have believed it was improving the value of those signs by committing that act. It knew it was damaging those signs. That was its intent. So I don't think the analogy, I don't think it can analogize to a contract, a building contract. I'm just going to conclude by explaining that the Ledesma case, where the court held that an employer can be held liable for the deliberate wrongful act of its employee if the basis of liability is not respondeat superior, which requires that the act be within the course and scope of the employment, but based instead on negligent hiring, training, or supervision. And although the plaintiff here made some attempt to invoke Ledesma, the facts alleged don't support it because the person who painted the signs here was not acting outside the course and scope of his duty. He was doing exactly what he was hired to do. If the court has any other questions, I will submit. I don't see any questions. Thank you very much, Mr. Colt. Mr. Mason, you had 40 seconds. I'll give you a minute. Thank you, Your Honor. I did want to point the court to some language in Delgado that I think will be helpful to consider, and that is the formulation of accident, that an injury-producing event is not an accident within the policy's coverage language when all of the acts, the manner in which they were done, and the objective accomplished occurred as intended by the actor. Here, at the very least, the objective accomplished, which is the abatement of wild postings, did not occur as intended by the insureds to the extent that the claimants in the underlying action alleged that their posters were not wild postings. In that sense, again, the insureds' employees just went to the wrong place to conduct graffiti abatement. Under Ledesma, quickly, it's the employer's negligence that is deemed an accident and an occurrence. So I think that is actually an important thing to consider in this case. It's not necessarily that the employee's deliberate acts might be cut off coverage for the employer, but if the employer is independently negligent, say they inadequately trained the employee, that's an independent claim here that triggers the duty to defend. As to the assertion that in American Asphalt, there was not any inherently harmful conduct, as the court noted, I think abating graffiti would be considered to be improving the property. It would be improving the property, but not the signage. Not the signage, but the signage wasn't supposed to be there. It was sued by the sign owners. That's correct. In American Asphalt, the damage was done to an adjacent property, and so by the contractor. So it's not that they were improving that adjacent property. They were improving the property on this property. And lastly, under California law, if there's a factual dispute in the underlying action, which I think we've seen here today as to the status of the site and other factors, that triggers the duty to defend. Thank you. I think we understand your argument. Thank you very much. We thank both counsel for the argument. That concludes the oral argument calendar for today. So the court is adjourned. Thank you both.
judges: Parker, BYBEE, DESAI